# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

BARRETT SCHWARZLOSE,

      Petitioner,

v.                                Case No. 14-12529

TYRONE WADDELL, and
KRISTIN GAGNON,

      Respondents.

_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Barrett Schwarzlose, through counsel, filed a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. At the time he filed the petition, Petitioner

was released on parole. He has since been discharged from parole supervision.[1] He

challenges his conviction for third-degree criminal sexual conduct (force or coercion).

For the reasons that follow, the court will deny the petition for a writ of habeas corpus.

## I. BACKGROUND

Petitioner's conviction arises from a sexual encounter between Petitioner and

I.C.[2] I.C. testified that Petitioner, forcibly and against her will, engaged in digital and

penile penetration. The defense contended I.C. consented to the sexual activity. An

---

[1] Petitioner's discharge from parole supervision does not defeat § 2254's "in custody" requirement because the requirement is satisfied as long as a petitioner is incarcerated, on parole, probation, or bail at the time a petition is filed. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *McVeigh v. Smith*, 872 F.2d 725, 727 (6th Cir. 1989)("[I]ndividuals on parole ... may be in custody for purposes of ... section 2254.").

[2] The court refers to the minor victim her by her initials to preserve her privacy.

Oakland County jury convicted Petitioner of third-degree criminal sexual conduct. Mich. Comp. Laws § 750.520d(1)(b). The trial court sentenced Petitioner to two to fifteen years in prison.

Petitioner filed an appeal of right in the Michigan Court of Appeals. He raised these claims: (i) Petitioner was denied his right to confront and cross-examine defense witnesses and to present a defense by the trial court's exclusion of text messages; (ii) trial court erred in denying request for instruction on consent; (iii) Petitioner was denied right to a unanimous verdict by improper jury instruction; and (iv) defense counsel was ineffective by failing to object to jury instruction permitting a non-unanimous verdict. The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Schwarzlose*, No. 298172, 2011 WL 3518207 (Mich. Ct. App. Aug. 11, 2011), lv. denied 490 Mich. 993.

Petitioner filed a motion for relief from judgment in the trial court. He raised eight claims of ineffective assistance fo counsel. The trial court denied the motion. 6/11/2012 Order, Oakland County Cir. Ct. (ECF No. 6-21). The Michigan Court of Appeals denied Petitioner's application for leave to appeal, *People v. Schwarzlose*, No. 311022 (Mich. Ct. App. Dec. 14, 2012) (ECF No. 6-28), as did the Michigan Supreme Court. *People v. Schwarzlose,* 494 Mich. 881 (Mich. July 30, 2013).

Petitioner then filed a petition for writ of habeas corpus. He raises these claims:

I.  Petitioner was denied the effective assistance of trial counsel in that:

   A.  Because of a fundamental lack of understanding of one of the most basic aspects of the law regarding hearsay, he believed that he would secure the admission of Petitioner's exculpatory statements to the police, and could get the Petitioner's version of events, and the basis for a defense of consent, before the jury through them;

accordingly, he wholly failed to prepare the Petitioner to testify on his own behalf, so that, when the prosecution announced that it did not intend to offer those statements, and the trial judge refused to admit them when offered by the defense, the Petitioner had no choice but to waive his right to testify, essentially eviscerating his defense.

B.     Once the trial judge announced (prior to the time for the presentation of the defense case) that he found no evidence to support the defense of consent, upon which counsel had premised his trial strategy, it would have been necessary to any reasonable practitioner that it was therefore necessary to offer the testimony of the Petitioner, and counsel's failure to do so (like his failure to be prepared to do so) constituted a wholesale failure of representation.

C.     Counsel so overestimated the effect of his efforts to impeach the complaining witness, and his abilities in general, that he pressured the Petitioner to refuse a mid-trial plea offer, with a Holmes Youthful Trainee Act disposition to having engaged in consensual sexual contact with the Complainant when she was fifteen, to which he could have honestly admitted, and which would have avoided a felony record, prison, and sexual offender registration. His advice, moreover, was based on a fundamental misapprehension about the nature and terms of the offer, and the strength of the advice, which no reasonably competent practitioner would have given, unduly pressured petitioner to forego a plea offer which he would have otherwise accepted.

D.     Counsel failed to muster an objection to testimony regarding the Complainant's alleged learning and language disabilities, or to retrieve from available material, including Facebook pages, text messages, and even the transcript of the preliminary examination, readily accessible information to counter, impeach, and undercut those claims, which were clearly intended to garner sympathy for the Complainant, and result in unfair prejudice against the Petitioner and his attorney.

E.     Counsel failed to offer an appropriate objection to testimony regarding the Complainant's alleged "depressed" mental state since the incident which led to the charges against Petitioner, or to retrieve from available material, including Facebook pages and text messages readily accessible information to counter, impeach, and undercut that testimony, which was clearly intended to garner sympathy for the Complainant, and create unfair prejudice against the Petitioner and his attorney.

3

F. Counsel inexplicably agreed to the admission of the report generated by the women's facility Haven in its entirety, allowing a written summary of the Complaining witness's prior consistent statements regarding the alleged assault into evidence, and into the jury room.

G. Counsel failed to object to improper prosecutorial misconduct impugning Petitioner's character, and seeking "justice" for the complaining witness.

II. The exclusion of two sets of text messages violated Petitioner's constitutionally assured rights to due process and to present a defense.

III. The refusal of the Michigan courts to require a jury instruction on the defense of consent violated Petitioner's constitutionally-assured rights to due process and to present a defense.

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court

4

has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation omitted). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, a federal court may grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the

5

presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id.* Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. DISCUSSION

### A. Ineffective Assistance of Trial Counsel

Petitioner argues that trial counsel rendered ineffective assistance because counsel: (i) misunderstood hearsay rules, and, when the court excluded Petitioner's exculpatory police statement, was unprepared to offer Petitioner's testimony in his own defense; (ii) failed to call Petitioner to testify to present a consent defense; (iii) improperly counseled Petitioner to reject a plea offer based upon incorrect assessment of the chances of an acquittal and a misunderstanding about the nature and terms of the offer; (iv) failed to object to testimony regarding victim's learning disability; (v) failed to object to testimony that the victim was depressed after the incident; (vi) consented to the admission of a report summarizing the victim's prior consistent statements; and (vii) failed to object to the prosecutor's misconduct.

Respondent argues that Petitioner's ineffective assistance of trial counsel claims are procedurally defaulted and that the default may not be excused because Petitioner fails to establish cause and prejudice or actual innocence.

6

Federal habeas relief is precluded on claims that were not presented to the state courts in accordance with the state's procedural rules because the AEDPA requires federal courts to allow state courts a fair opportunity to resolve an alleged constitutional violation. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1068 (6th Cir. 2015). "A habeas petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default." *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc).

Petitioner raised these ineffective assistance of trial counsel claims for the first time in his motion for relief from judgment. Both the Michigan Court of Appeals and the Michigan Supreme Court summarily denied Petitioner leave to appeal the trial court's order, citing Michigan Court Rule 6.508(D). Because these orders are unexplained, the court "looks to the last reasoned state court opinion to determine the basis for the state court's rejection of" Petitioner's claims. *Id.* at 291. The last reasoned state court opinion is the trial court's opinion denying relief form judgment. The trial court specifically relied on Michigan Court Rule 6.508(D)(3) to deny Petitioner's claims, and found no cause or prejudice to excuse the default and no credible showing of actual innocence. The Sixth Circuit recognizes Mich. Ct. Rule 6.508(D)(3) as an independent and adequate state ground sufficient to invoke procedural default. *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). Petitioner's ineffective assistance of counsel claims are procedurally defaulted unless he can establish either (1) cause for

the default and prejudice from the alleged constitutional violation, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To establish "cause", a petitioner must "'show that some objective factor external to the defense impeded counsel's efforts to raise a claim in the state courts.'" *Davila v. Davis*, — U.S. —, 137 S. Ct. 2058, 2066 (2017), *quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986). "A factor is external to the defense if it "cannot fairly be attributed to" the prisoner." *Id.*, *quoting Coleman,* 501 U.S. at 753.

Petitioner alleges his appellate attorney's ineffectiveness as cause to excuse his default. Ineffective assistance of appellate counsel may constitute cause excusing a procedural default. *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013). The trial court, on post-conviction review, denied Petitioner's ineffective assistance of appellate counsel claim on the merits:

> Defendant fails to establish that appellate counsel was ineffective for his failure to raise [Petitioner's ineffective assistance of counsel] claims on appeal. An appellate attorney is not required to raise every conceivable issue. *People v. Reed*, 198 Mich. App. 639, 646; 499 N.W.2d 441 (1993). The failure to assert all arguable claims is not sufficient to overcome the presumption that counsel functioned as a reasonable appellate attorney in selecting the issues presented. *Id.* Moreover, counsel is not required to advocate a meritless position. *People v. Snider*, 239 Mich. App. 393, 425; 608 N.W.2d 502 (2000).

6/11/2012 Op. & Order, ECF No. 6-21, Pg. ID 1268.

In addition to finding Petitioner's ineffective assistance of counsel claims procedurally defaulted, the trial court also addressed and denied each of these claims on the merits. The trial court's alternative merits adjudication is an adjudication "on the merits" and entitled to deference under the AEDPA. *See Brooks v. Bagley*, 513 F.3d

618, 624-25 (6th Cir. 2008); *Lyons v. Bergh*, No. 15-13097, 2018 WL 4358923, *5 (E.D. Mich. Sept. 13, 2018).

An ineffective assistance of counsel claim has two components. *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Id.* at 687. To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. In order to establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. Id. at 694.

A petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). The prejudice standard in the context of an alleged failure to raise issues on appeal requires a showing that there is "a reasonable probability, but for counsel's unreasonable failure . . . he would have prevailed on his appeal." *Smith*, 528 U.S. at 285. The process of "'winnowing out weaker arguments on appeal' " is "the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986), quoting *Barnes*, 463 U.S. at 751-52. "'[O]nly when ignored issues are clearly stronger

than those presented, will the presumption of effective assistance of [appellate] counsel be overcome.'" *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002), quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. It would also "run[]the risk of burying good arguments – those that ... go for the jugular – in a verbal mound made up of strong and weak contentions." *Barnes*, 463 U.S. at 753 (quotation omitted).

To properly evaluate the reasonableness of the trial court's conclusion that appellate counsel was not ineffective for failing to raise the omitted claims on appeal, the court must evaluate the merits of the underlying ineffective assistance of counsel claims. For the reasons set forth below, the court finds that the state court's decision denying the ineffective assistance of appellate counsel claim was neither contrary to nor an unreasonable application of *Strickland*.

1.

Petitioner's first two ineffective assistance of counsel claims concern Plaintiff's failure to testify in his own defense. Petitioner gave two tape recorded statements to police. During a pretrial hearing conducted the week before trial, the trial court granted a defense motion to exclude the second tape-recorded statement, but ruled that the tape could be used for impeachment purposes if Petitioner testified. The trial court ruled the first tape-recorded statement admissible after granting a minor redaction requested by the defense. The day before trial began, the prosecution stated it would not move to admit the first statement. The trial court denied defense counsel's motion

to admit the statement because, if offered by Petitioner, the statement no longer qualified as an admission by a party-opponent and did not fall under any other hearsay exception.

Petitioner argues that counsel assumed that Petitioner's consent defense would be presented to the jury through the tape-recorded statement, and concluded that Petitioner would not need to testify. Based upon counsel's mistaken belief, Petitioner argues, counsel failed to prepare him to testify. Petitioner then felt compelled to waive his right to testify in his own defense because he was unprepared and because counsel was too confident in the chances of a not guilty verdict.

The state court held that Petitioner's decision not to testify was voluntary and was not forced or coerced by defense counsel's preparation. 6/11/2012 Op. & Order at 4-5, ECF No. 6-21, Pg. ID 1266. The trial court and defense counsel engaged in a thorough colloquy with Petitioner regarding his decision to waive his right to testify. There is no indication in the record that Petitioner's decision was coerced by counsel's failure to prepare him to testify. His decision just as easily could have been informed by the trial court's ruling that the second tape-recorded interview could be used as impeachment evidence if Petitioner testified. For this reason, it also would have been reasonable for counsel to conclude that placing Petitioner on the stand would be too risky. A defendant retains the "ultimate authority" to decide whether to testify on his own behalf. *Barnes*, 463 U.S. at 751. Petitioner's argument that his decision was based upon defense counsel's mistaken assessment of the strength of the defense absent Petitioner's testimony is also unavailing. Even if defense counsel made an

"erroneous strategic prediction" concerning the likely outcome of the trial, this is not, by itself, proof of deficiency. *Lafler v. Cooper*, 566 U.S. 156, 174 (2012).

In addition, appellate counsel could reasonably have determined that, because Petitioner was informed of his right to testify by defense counsel and by the trial court and expressed no hesitation or ambivalence when waiving this right, this was not a strong claim for appeal. Accordingly, Petitioner has not shown that the trial court's denial of this ineffective assistance of appellate counsel claim was contrary to or an unreasonable application of *Strickland* or *Barnes*.

2.

Petitioner's third ineffective assistance of counsel claim alleges that defense counsel pressured Petitioner to refuse a mid-trial plea offer based upon counsel's unwarranted confidence that the jury would return a not guilty verdict and counsel's misunderstanding of the plea offer. The trial court denied this claim on post-conviction review, holding that the nature and significance of the plea offer were placed on the record. 6/11/2012 Op. & Order at 6. The trial court also held that appellate counsel was not ineffective in failing to raise this claim. *Id.* at 7.

The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). The standard for obtaining relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014), *quoting Metrish v. Lancaster*, 569 U.S. 351, 358 (2013). In the context of an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984), the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply

12

in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted).

Petitioner fails to overcome this doubly deferential standard of review. He has not shown that his appellate attorney knew Petitioner did not understand the terms of the plea offer. Petitioner offers affidavits executed by himself, his parents, and a family-friend lawyer to support his claim that defense counsel misunderstood and incorrectly explained the plea offer. The affidavits were executed over five months after the Michigan Court of Appeals affirmed Petitioner's conviction. Petitioner does not offer any proof that he informed appellate counsel about his claim before counsel prepared an appeal. Appellate counsel is not ineffective for failing to raise a claim when the basis for the claim was not communicated to counsel. *Shelton v. McQuiggin*, 651 Fed. App'x 311, 315 (6th Cir. June 1, 2016) ("Without any knowledge of the alleged violation or any clue to suggest that he investigate the claim, [petitioner's] appellate counsel could not have provided ineffective assistance."). Moreover, when the prosecutor placed the terms of the plea agreement on the record, Petitioner did not express any confusion about the offer. Petitioner fails to demonstrate that the state court's resolution of this ineffective assistance of appellate counsel claim was contrary to or an unreasonable application of *Strickland* or *Barnes.*

### 3.

Petitioner's fourth and fifth ineffective assistance of counsel claims concern counsel's failure to object to testimony about I.C.'s learning and language disabilities and her depressed mental state following the assault. On post-conviction review, the trial court found no basis for excluding this testimony. The trial court found the

testimony brief and used for the proper purpose of explaining why the victim did not testify as well or speak as fluently as someone else might have. 6/11/201 Op. & Order at 5, ECF No. 6-21, at 1266. The court agrees with the state court's characterization of this testimony as brief. The prosecution did not seek to use this testimony to convince the jury to convict Petitioner. Petitioner has not shown that appellate counsel performed deficiently by failing to raise this issue.

4.

Next, Petitioner alleges that defense counsel was ineffective in stipulating to the admissibility of a report prepared by a sexual assault nurse examiner because it bolstered the victim's credibility by placing her prior consistent statements into evidence. On post-conviction review, the trial court held that admission was proper under Mich. Rule. Evid. 803(4) and (6). 6/11/12 Op. & Order at 5, ECF No. 6-21, Pg. ID 5. Petitioner was not prejudiced by defense counsel's decision to stipulate to the admission of this evidence, where this evidence would have been admitted regardless, and appellate counsel was not ineffective for failing to raise this claim.

Petitioner briefly argues admission of the report also violated the Confrontation Clause. *See* Pet's Brief, at 31, n.17; ECF No. 2, Pg. ID 79, n.17. The victim and the sexual assault nurse examiner testified at trial. "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of [her] prior testimonial statements." *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004). The Confrontation Clause "does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id.* The report's admission did not violate the Confrontation Clause.

14

5.

Petitioner's final subclaim alleges that trial counsel was ineffective for failing to object to the prosecutor's closing argument. Petitioner specifically objects to these remarks:

> I mean, when it comes down to it, ladies and gentlemen, when you can buy a nice suit and you can buy two defense attorneys and you can buy yourself a $3,900 expert, but you can't buy class.

4/8/10 Tr. at 71.

> And you have a unique opportunity here, ladies and gentlemen. You have a unique opportunity, based on this evidence. You have the opportunity to say to [I.C.], we know. We understand. We get it. ... We know you didn't want to have sex that day. We know what he did to you that day was wrong, and we're going to hold him accountable. We're going to find him guilty, and we're going to get you justice.

*Id.* at 108.

The state court found nothing improper in the prosecutor's argument. 6/11/2012 Op. & Order at 6, ECF No. 6-21, Pg. ID 1267. The first argument, considered in context, asked the jury to recall the testimony about Petitioner's bad behavior rather than the cleaned-up appearance he presented at trial. And, even if the prosecutor's argument was improper it was so isolated and brief that appellate counsel's decision not to argue trial counsel was ineffective in failing to object was eminently reasonable.

The prosecutor's argument regarding obtaining justice for the victim was not improper. The prosecutor did not ask the jury to convict based upon emotion, sympathy, civic duty, or bias. Instead, the prosecutor relied on the evidence to ask the jury to return a guilty verdict, thereby providing justice for the victim. A prosecutor's

15

request to secure "justice" for a victim in light of the evidence is proper.  Trial counsel was not ineffective for failing to object to the remarks.

6.

In sum, Petitioner fails to show the state court's denial of his ineffective assistance of appellate counsel claim was contrary to or an unreasonable application of *Strickland* or *Barnes*.  Because Petitioner has not demonstrated cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  Petitioner does not present any new reliable evidence to support an actual innocence claim.  He, therefore, has not demonstrated that a fundamental miscarriage of justice would result by a failure to excuse his procedural default.  *See House v. Bell*, 547 U.S. 518, 536 (2006).  These claims are procedurally defaulted and denied.

### B.  Exclusion of Text Messages

Petitioner seeks habeas relief on the ground that the trial court's exclusion of two sets of text messages violated his rights to due process and to present a defense.

The right of a defendant to present a defense has long been recognized as "a fundamental element of due process of law." *Washington v. Texas,* 388 U.S. 14, 19 (1967).  It is one of the "minimum essentials of a fair trial." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).  While the right to present a defense is a fundamental tenet of due process, it is "not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted).  The exclusion of evidence is

unconstitutional where it "infringe[s] upon a weighty interest of the accused." *Id., citing Rock v. Arkansas*, 483 U.S. 44, 58 (1987). In determining whether the exclusion of evidence infringes upon a weighty interest of the accused, the question is whether the defendant was afforded "'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), *quoting California v. Trombetta*, 467 U.S. 479, 485 (1984). But, "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983).

On federal habeas review, a court considering the exclusion of evidence must balance the state's interest in enforcing its evidentiary rules against the relevance and cumulative nature of the excluded evidence, and the degree to which the excluded evidence was "indispensable" to the defense. *Crane*, 476 U.S. at 691. State rules excluding evidence from criminal trials "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, 523 U.S. at 308 (internal citations omitted).

1.

The first set of text messages concern I.C.'s relationship with Kyle Sargent, her boyfriend with whom she had broken up on the day of the sexual assault. The Michigan Court of Appeals summarized the substance and context of the messages:

> The first text message at issue was to Kyle Sargent ... In a message to Sargent, the victim stated, "you should always force me to do shit I don't want to". The context of the messages was about sex, and in reading the entire conversation, it appears that the victim was telling Sargent that she usually ended up enjoying having sex with him even when she initially did not want to, so he should "make" her have sex with him.

In addition, the victim texted a person named "Neil." She texted Neil about Sargent: "Yea a lil im [sic] dealing with this one guy and I can't stand him whenever we hang he pushes me into sexual shit and grops [sic] on me." She also texted to Neil: "Oh he just does things I don't want to, pushes me to do sexual shit." She claimed in additional texts that Kyle Sargent "just wouldnt [sic] stop touching me and wont [sic] stop groping me." Defendant made the following offer of proof regarding the falsity of the allegations:

> The alleged victim will testify regarding the substance of the text messages she sent to another regarding her false allegations of sexual assault by Kyle Sargent. In addition, Kyle Sargent will testify that the allegations the alleged victim made against him in the text messages accusing him of sexually assaulting her are false.

*Schwarzlose,* 2011 WL 3518207 at *1.

Petitioner filed a pretrial motion to present evidence of these messages, which Petitioner characterized as I.C.'s false allegations that she had been raped by Sargent. The trial court denied Petitioner's motion. On direct appeal the Michigan Court of Appeals held the evidence properly excluded because, although Michigan's rape-shield statute, Mich. Comp. Laws § 750.520j, allows admission of a victim's previous false accusations of rape, Petitioner "had no idea whether the prior comments, which [he] characterizes as 'accusations,' were even true." *Schwarzlose,* 2011 WL 3518207 at *2. The state court characterized Petitioner's efforts as a "fishing expedition" he hoped would "uncover some basis for arguing that the prior accusation was false" and concluded it was reasonable to exclude Petitioner's attempts to "conduct a trial within a trial by having Sargent testify that the accusations made against him were false." *Id.*

The Supreme Court has found that Michigan's rape-shield statute "represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy." *Michigan v. Lucas,* 500

U.S. 145, 149-50 (2001). State courts "retain wide latitude" to impose reasonable limits on a defendant's cross-examination of an adverse witness "based on concerns about ... harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* (internal quotation marks omitted). The trial court's desire to avoid a "trial within a trial" served a legitimate interest and the exclusion of these texts was not "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, 523 U.S. at 308. Petitioner has not shown that the Michigan Court of Appeals' decision was contrary to or an unreasonable application of Supreme Court precedent.

## 2.

The second set of text messages were received by I.C. the day after the sexual assault. The texts read:

> What personal reasons are you feeling bad for?
>
> Stop pushing me away. I want to do so many sexual thing [sic] with you sexually. I can't keep my hands off of you.
>
> I'm coming to your house right now and fixing this.

*Schwarzlose*, 2011 WL 3518207 at *2, n.1.

I.C. gave her cell phone to police because she believed the texts came from Petitioner. The police also initially believed Petitioner sent them. After investigation, the police discovered that the texts were sent from a phone owned by Nick Hines, a friend of the victim's. *Id.* at *2. Petitioner moved for admission of these texts on the ground that they were relevant to I.C.'s credibility because they tended to show that she fabricated evidence that Petitioner confessed to wrongdoing. I.C. testified at the

19

preliminary examination that she and Hines were facebook friends but she did not know why he would be texting her. *Id.* Hines testified that he had no knowledge of these messages. *Id.* The trial court excluded the text messages.

The Michigan Court of Appeals held that the trial court properly decided the text messages were inadmissible. *Id.* at *3. The court reasoned the text messages had no bearing upon the victim's credibility where Petitioner provided no evidence to show the victim fabricated the text messages and the proposed testimony was irrelevant and inadmissible because it would require speculation to link it to the facts at issue. *Id.*

The state court's requirement that evidence be relevant and based upon more than mere speculation is a sound one. The Michigan Court of Appeals' holding that Petitioner failed to provide more than mere speculation to support the theory that I.C. fabricated these messages was reasonable. Petitioner has not shown that the exclusion of the messages violated his right to present a defense or to due process.

Habeas relief is denied on this claim.

### C. Jury Instruction Claim

Petitioner alleges that the trial court erred in failing to give the jury an instruction on consent. The Michigan Court of Appeals upheld the trial court's decision:

> At trial, the victim specifically denied that she was a willing participant. The victim testified that she yelled for defendant to stop, and that she hit him and struggled to escape. She stated unequivocally that she did not consent to defendant's penetration of her vagina with his finger or his penis. Defendant's purported "evidence" that the victim consented is based on the victim's testimony that she smiled and giggled at defendant, and that she kissed him back. Neither of these facts is evidence that the victim consented to defendant penetrating her with his penis and finger. As a result, the trial court properly refused to instruct the jury on the affirmative defense of consent.

*Schwarzlose*, 2011 WL 3518207, at *4.

The burden of establishing that a jury instruction error warrants habeas relief is a heavy one. To show that a jury instruction violates due process, a habeas petitioner must demonstrate "both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009) (citations omitted). A federal court may not grant the writ of habeas corpus on the ground that a jury instruction was incorrect under state law; instead, the relevant inquiry is "whether the ailing instruction so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). The jury instruction "must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72. The burden of proving that omission of a jury instruction violated due process is even heavier than that imposed on an incorrect instruction claim. "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

The jury was instructed of the elements of third-degree criminal sexual conduct, including that the Petitioner engaged in an act of sexual penetration through force or coercion. See ECF # 6-11, Pg. ID 1008. When a trial court instructs a jury on the necessary elements of third-degree criminal sexual conduct, the instructions "implicitly require the jury to find that the complainant did not consent to sexual intercourse before the jury may find defendant guilty." *People v. Hale*, 370 N.W.2d 382, 383 (Mich. Ct. App. 1985). The jury, therefore, could not have found Petitioner guilty of third-degree

21

criminal sexual conduct if it believed the victim consented to the sexual act.  Thus,

Petitioner cannot show that the trial court's decision not to give a specific consent

instruction violated Petitioner's right to due process.

Habeas relief is denied on this claim.

## IV.  CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed

unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253.  A COA

may be issued "only if the applicant has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2).  A petitioner must show "that reasonable

jurists could debate whether (or, for that matter, agree that) the petition should have

been resolved in a different manner or that the issues presented were adequate to

deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484

(2000) (citation omitted).

The court concludes that reasonable jurists would not debate the conclusion that

the petition fails to state a claim upon which habeas corpus relief should be granted.

Therefore, the court will deny a certificate of appealability.

## V. CONCLUSION

IT IS ORDERED that Petitioner Barrett Schwarzlose's petition for a writ of

habeas corpus [Dkt. # 1] is DENIED and the court DENIES a certificate of appealability.


s/Robert H. Cleland_____
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  September 26, 2018

22

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, September 26, 2018, by electronic and/or ordinary mail.

s/William Barkholz for Lisa Wagner
Case Manager and Deputy Clerk
(810) 292-6523